IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF PREMISES LOCATED AT 1668 GRIFFY BRANCH ROAD, CANNEL CITY, KENTUCKY 41408 | Case No. 5:26-MJ-3138-EBA |

**AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE**

I, Matthew A. Eversole, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. Your Affiant makes this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for warrants to search a residence located at 1668 Griffy Branch Road, Cannel City, Kentucky 41408 (hereinafter, "**Subject Premises")**, which is more particularly described below and in Attachment A for the things described in Attachment B. As explained herein, there is probable cause to believe that a search of the **Subject Premises** will result in the discovery of evidence of violations of Title 21 U.S.C. §§ 841(a)(1) (Possession with Intent to Distribute Controlled Substance) and 846 (Conpiracy to Distribute Controlled Substances) (hereinafter, the "Specified Federal Offenses").

2. Affiant is a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") and has been so employed since April of 2021. Your Affiant is currently assigned to Lexington Group III. Additionally, your Affiant holds a Bachelor of Arts in Physical Education from Berea College located in Berea, Kentucky. Prior to becoming a Special Agent, your Affiant successfully completed the eighteen (18) week basic training conducted at the Department of Criminal Justice Training in Richmond, Kentucky, certifying him as a peace officer

in the Commonwealth of Kentucky. After completion of the eighteen (18) weeks, your Affiant was employed by the Lee County Sheriff Office in Beattyville, Kentucky, for approximately eleven months as Patrol Deputy. Your Affiant was employed with the Clark County Sheriff Office in Winchester, Kentucky, for approximately five years and six months. Your Affiant was assigned as a Patrol Deputy for approximately two years and five months. Your Affiant was assigned as a Deputy Detective for approximately three years and six months with the Criminal Investigations Division and Gateway High Intensity Drug Trafficking Area (HIDTA) Task Force. Your Affiant is a graduate of the Criminal Investigator Training Program and the ATF Special Agent Basic Training program, both of which are conducted at the Federal Law Enforcement Training Center in Glynn County, Georgia.

3. Your Affiant received training and has gained experience in all aspects of law enforcement, including interviewing and interrogation techniques, arrest procedures, search warrant applications, the execution of searches and seizures, computer evidence identification, computer evidence seizure and processing, and various other criminal laws and procedures. Your Affiant has not included every detail of every aspect of training, education, and experience, but have highlighted those areas most relevant to this application.

4. Your Affiant has participated in this investigation and, because of the Affiant's participation and information received from other law enforcement officers, your Affiant is thoroughly familiar with the circumstances of the investigation and the information set forth in this affidavit. The statements contained in this affidavit are based on: (1) your Affiant's personal participation in the investigation; (2) information provided to your Affiant by Special Agents of the ATF and members of state and/or local law enforcement; (3) your Affiant's experience and training. Unless otherwise indicated, all conversations and statements described in this affidavit

are related in substance and part. This affidavit is intended to show merely that there is sufficient probable cause for the requested search warrant and does not set forth all your Affiants' knowledge about this matter.

5. As set forth below, there is probable cause to believe that the below listed **Subject Premises** will contain evidence of the Specified Federal Offenses.

## BACKGROUND OF INVESTIGATION

6. In April of 2026, a Morgan County Sheriff Office (MSCO) confidential informant (CI) [1] provided information about a person identified as Bobby JONES (hereinafter, "JONES") in West Liberty, Kentucky, which is located in the Eastern District of Kentucky. Information received from the CI claimed that JONES was distributing measurable amounts of methamphetamine.

## CONTROLLED PURCHASES

7. In late April of 2026, investigators utilized a CI to conduct a controlled purchase of methamphetamine from JONES in Wolfe County, Kentucky, which is in the Eastern District of Kentucky. The transaction was audio/video recorded. Additionally, local law enforcement conducted physical surveillance from a nearby location. Prior to the transaction, the CI traveled to the agreed upon meeting location where the CI awaited the arrival of JONES. Investigators, then, observed JONES arrive at the location operating a black Chevrolet pickup truck. The CI exited their vehicle and proceeded to enter the passenger seat of JONES' vehicle. The CI provided JONES with buy funds in exchange for suspected methamphetamine. Upon completion, investigators met with the CI and obtained the suspected methamphetamine. The suspected methamphetamine was submitted to the Kentucky State Police (KSP) Eastern

---

[1] The CI has provided information and conducted multiple controlled purchases involving narcotics. The CI has not provided any false or deceiving information during the time the CI has been active.

Laboratory for analysis where it was confirmed to be a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance with a net weight of 29.048 grams.

8. On May 12th, 2026, investigators utilized the CI to arrange a second controlled purchase of methamphetamine from JONES. The CI arranged the controlled purchase by communicating through a Facebook Messenger account associated with Elsie MULLINS (hereinafter, "MULLINS"). MULLINS is believed to be JONES's girlfriend and known to also reside with JONES at 52 Vic Elam Road, West Liberty, Kentucky, which is located in the Eastern District of Kentucky. Through this communication, the CI was asked to provide the funds for the methamphetamine up front as JONES did not have the money necessary to obtain the drugs from his source in advance of the transaction.

9. On May 13th, 2026, the CI traveled to JONES' residence at 52 Vic Elam Road and met with both JONES and MULLINS. This initial meeting was audio/video recorded. The CI provided JONES with the buy funds up front as requested by JONES so that JONES could meet with his supplier to obtain the requested drugs. JONES and the CI agreed to return in approximately one hour. Following this meeting, the CI departed from the area. As instructed, the CI returned to JONES' residence after waiting with investigators for JONES to return. This second meeting was not audio/video recorded due to a malfunction with the equipped recording device. Nonetheless, during a debrief with the CI, the CI explained that upon returning to the residence, MULLINS provided suspected methamphetamine to the CI. The CI provided the obtained suspected methamphetamine to investigators. The suspected methamphetamine was submitted to the Kentucky State Police (KSP) Eastern Laboratory for analysis which confirmed

it to be a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, with a net weight of 27.467 grams

10. On May 28th, 2026, investigators utilized the CI to conduct a third controlled purchase of suspected methamphetamine from JONES at his residence. Prior to the purchase, investigators initiated surveillance in the area of JONES' residence. At that time, investigators observed JONES's vehicle, a 2010 Chevrolet Silverado bearing Kentucky registration plate M0Y122, registered to JONES, at JONES's residence. After confirming that JONES's vehicle was present at the residence, the CI was instructed to contact JONES and MULLINS to arrange the controlled purchase. Similar to the May 13th transaction, the CI was asked by JONES and MULLINS to provide the funds upfront; however, as instructed, the CI declined to do so. Nonetheless, through text communication, MULLINS indicated to the CI that JONES would leave to retrieve the narcotics. Following this conversation, investigators drove by JONES's residence and noted that his vehicle was no longer present.

11. Based on video surveillance, investigators observed JONES's vehicle arrive at the **Subject Premises**. JONES was observed by investigators exiting the vehicle and entering the residence located at the **Subject Premises**. From arrival to departure, JONES was observed at the **Subject Premises** for approximately twenty (20) minutes. After departing from the **Subject Premises**, JONES returned to his residence at 52 Vic Elam Road. The CI, then, returned to JONES's residence to complete the transaction. The transaction was audio/video recorded. Upon arrival, the CI exited their vehicle and proceeded to enter JONES's residence. The CI provided JONES with buy funds in exchange for the suspected methamphetamine. Upon completion, investigators met with the CI and obtained approximately 89 grams of suspected methamphetamine, including packaging. The suspected methamphetamine was submitted to the

DEA Lab for testing where it was confirmed to be, in fact, methamphetamine with a net weight of 86.057 grams. Additionally, purity analysis showed that the substance was 89% pure with a pure substance weight of 76.590 grams.

12. A few hours after the completion of the transaction, JONES's vehicle was observed traveling back to the **Subject Premises** where he remained for approximately fifteen (15) minutes before departing. Based on the CI declination to provide funds upfront to JONES prior to the transaction as well as the length of JONES's stay at the **Subject Premises**, investigators believe that JONES's second trip to the **Subject Premises** was to provide the funds received from the CI for the methamphetamine to JONES's source of supply

13. On June 3rd, 2026, your Affiant received additional information from the CI identifying JONES's source of supply. The CI identified JONES' supplier as Mindy HANEY (hereinafter, "HANEY"). According to the CI, JONES and MULLINS had identified HANEY as JONES' narcotics supplier on multiple prior occasions. Investigators obtained a copy of HANEY's operators license which listed her residence at 1669 Griffey Branch Road, Cannel City, Kentucky 41408, which is located across the road from the **Subject Premises**. However, investigators are aware that 1669 Griffey Branch Road is only land and that no actual residence is located on the property. Instead, the **Subject Premises**, as described in Attachment A, is developed with a residential building. Additionally, local law enforcement, who are familiar with HANEY, know that HANEY's primary residence is the **Subject Premises.**

14. On June 5th, 2026, investigators instructed the CI to attempt to conduct a fourth controlled purchase of suspected methamphetamine from JONES at his residence. Prior to the purchase, investigators initiated surveillance along the route investigators believed JONES would utilize to drive to the **Subject Premises**. Your Affiant, along with Morgan County

Sheriff's Detective Doyle Wilson, located JONES's Chevrolet Silverado at a local business in Wolfe County, Kentucky. After locating JONES's vehicle, investigators instructed the CI to contact JONES and confirm an order for a quantity of methamphetamine. As before, the CI communicated with JONES through MULLINS. Through text, MULLINS asked the CI the quantity of narcotics the CI sought. After confirming the amount, MULLINS responded that "we" (referring to herself and JONES) would leave to retrieve the requested narcotics.

15. Following these communications, JONES's vehicle was observed departing the local business in Wolfe County with investigators initiating mobile surveillance on the vehicle. JONES's vehicle travelled directly to the **Subject Premises**. Upon arrival at the residence, investigators observed JONES exit his vehicle and proceed to enter the **Subject Premises**. JONES remained inside the residence for approximately thirteen (13) minutes before returning to his vehicle. JONES departed the area and travelled directly to his residence located at 52 Vic Elam Road, West Liberty, Kentucky.

16. As instructed by investigators, the CI traveled to JONES's residence where the CI exited their vehicle and proceeded to enter the residence. The CI was greeted by MULLINS. JONES entered the room and explained that "Mindy" (referring to HANEY) had stated that she was going to "lay low" due to concerns that her narcotics activity was being watched. JONES told the CI to come back later to retrieve the narcotics. After learning this information, the CI departed the area and met with investigators. No follow-up transaction for the requested narcotics occurred, and the CI did not obtain any narcotics from JONES on this date.

17. On June 11th, 2026, investigators utilized the CI to conduct a controlled purchase of suspected methamphetamine from JONES at his residence. Prior to the purchase, investigators initiated surveillance along the route investigators believed JONES would drive to the **Subject**

**Premises**. As expected, investigators observed JONES's vehicle leave his property and travel along the route directly to the **Subject Premises.** JONES's vehicle was also observed departing the **Subject Premises** and traveling directly back to his residence at 52 Vic Elam Road. Altogether, JONES's travel to the **Subject Premises** and back to his residence took approximately twenty-eight (28) minutes. Based on the distance between the two locations, it would take a person approximately ten (10) minutes to travel from JONES's residence to the **Subject Premises**. The total length of travel on June 11 combined with the surveillance conducted by law enforcement reflects that JONES traveled directly between the two locations without making any additional stops in between.

18. Following JONES's arrival, the CI traveled to JONES' residence to conduct the transaction. The transaction was audio/video recorded. The CI exited their vehicle and proceeded to enter the residence. The CI was greeted by JONES who opened the door for the CI and directed the CI to MULLINS who was further inside the residence. The CI met with and provided MULLINS with the buy funds in exchange for the suspected methamphetamine. Upon completion, investigators met with the CI and obtained approximately 116 grams of suspected methamphetamine, including packaging. Based upon your Affiant's training and experience, the purchased substance is consistent in color and crystalline form with methamphetamine, a Schedule II controlled substance. The suspected methamphetamine field-tested positive for the presence of methamphetamine using the TruNarc.[2]

**THE SUBJECT PREMISES**

[2] TruNarc is a handheld narcotics analyzer that allows law enforcement officers to scan for over 498 suspected controlled substances.

19. The **Subject Premises** is believed to be a single-story residence with a metal roof located at 1668 Griffy Branch Road, Cannel City, Kentucky 41408. The residence is currently occupied by Mindy and Jason HANEY.

**KNOWLEDGE AND EXPERIENCE**

20. Based on Affiant knowledge, training, and experience, Affiant conversations with other law enforcement officers, and Affiant participation in this and other investigations, when viewed as a whole, the facts, as stated in this affidavit, establish probable cause that narcotics trafficking activity is occurring at the **Subject Premises**.

21. Based on Affiant knowledge, training, and experience, and Affiant conversations with other law enforcement officers, your Affiant knows it is a common practice for individuals involved in narcotics trafficking to keep items related to narcotics trafficking in their homes including, but not limited to, illegal controlled substances (including, but not limited to, heroin, methamphetamine, cocaine, and prescription pills); materials used to cut, measure, weigh, use, ingest, package, conceal, transport, or transfer such substances; drug paraphernalia; drug ledgers; photographs of narcotics; devices used to communicate with other narcotics traffickers and persons who purchase their product; financial records documenting the narcotics trafficking; or any other evidence of drug trafficking. Further, your Affiant knows that narcotics traffickers often keep firearms at their residences for protection from rival drug dealers, even if they are convicted felons or otherwise prohibited persons.

22. Based on Affiant knowledge, training, and experience, Affiant conversations with other law enforcement officers, your Affiant knows it is common practice for individuals involved in narcotics trafficking to keep items related to narcotics trafficking in such places on the property beyond the home.

23. Based on Affiant knowledge, training, and experience, Affiant conversations with other law enforcement officers, and Affiant participation in this and other investigations, your Affiant knows that individuals engaged in drug trafficking often maintain large amounts of U.S. currency in order to maintain and finance their ongoing controlled substances businesses.

24. Based on Affiant's knowledge, training, and experience, including in the execution of search warrants, your Affiant knows that subjects who engage in illegal activity are similar to others in our society who maintain documents and records, including handwritten notes, photographs, text messages, voice messages, and other common forms of communication. Often, these individuals retain documents and records for long periods, regardless of whether the value of the items has diminished. Your Affiant knows in some cases documents that are incriminating in nature are still possessed months, or even years, after they come into the subject's possession. Sometimes, these subjects do not realize the incriminating nature of the documents or believe that investigators will not appreciate the incriminating nature of the material, such as vehicle rental records, or proof of payments made to other individuals who carry out the criminal conduct, and ledgers reflecting funds paid in furtherance of the criminal enterprise.

25. Based on Affiant knowledge, training, and experience, your Affiant also knows that digital devices, specifically cellular phones, can contain evidence of narcotics activity. Narcotics traffickers use phones to communicate with other co-conspirators to advertise drugs for sale or firearms possession. People who engage in criminal activity frequently install social media applications ("apps"), like Instagram or Facebook, on their cell phones. They then use these apps to communicate privately with co-conspirators. Individuals involved with narcotics trafficking and illegal firearms commonly post photographs and videos to Facebook, Instagram, or other social media apps, demonstrating their association with co-conspirators, or holding firearms,

drugs, and/or gang paraphernalia. Records of these communications, photographs, and videos may be stored by the social media companies or within the phone itself. Additionally, when individuals use their phone, location data stored by the device can be used as evidence of their whereabouts at a particular time. These records, electronic messages, and related data may continue to reside on digital devices within **Subject Premises**.

## CONCLUSION

26. Based on the foregoing, there is probable cause to believe that a search of the **Subject Premises** will result in the discovery of evidence of violations of the Specified Federal Offense, that is, violations of 21 U.S.C. §§ 841(a)(1) and 846, possession with the intent to distribute controlled substance and conspiracy to distribute controlled substances, respectively. Your Affiant therefore respectfully requests the issuance of the proposed search warrant.

## REQUEST FOR SEALING

27. Your Affiant further requests that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may give targets an opportunity to flee/continue flight from

prosecution, destroy or tamper with evidence, change patterns of behavior, notify confederates, or otherwise seriously jeopardize the investigation.

Respectfully submitted,

/s/ Matthew A. Eversole

Matthew A. Eversole
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Sworn to me and subscribed by telephone in accordance with Fed. R. Crim. P. 4.1 and 41(d)(3) on the 22 day of June 2026.

Signed By:
*Edward B. Atkins* EBA
United States Magistrate Judge

UNITED STATES MAGISTRATE JUDGE